## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

TERESA D. P.,

      Plaintiff,

v.                                                                    Civ. No. 23-704 GBW

MARTIN O'MALLEY, *Commissioner of the*
*Social Security Administration,*

      Defendant.

## <u>ORDER GRANTING REMAND</u>

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse or

Remand for a Rehearing with Supporting Memorandum. *Doc. 19*. For the reasons

explained below, the Court GRANTS Plaintiff's Motion and REMANDS the case to the

Commissioner for further proceedings consistent with this opinion.

### I.  PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Income ("SSI") in early September

2016, alleging disability beginning at the same time. Administrative Record ("AR") at

80, 175-83. Plaintiff's application was denied on initial review on November 15, 2016, *id*.

at 104, and again on reconsideration on October 13, 2017, *id*. at 111. On November 7,

2018, a hearing was held by an Administrative Law Judge ("ALJ"). *Id*. at 32-78. The

ALJ issued an unfavorable decision on November 27, 2018. *Id*. at 9-26. Plaintiff sought

review from the Social Security Administration's ("SSA") Appeals Council, which

denied review on September 5, 2019, *id*. at 1-3, making the ALJ's denial the

Commissioner's final decision, *see* 20 C.F.R. § 416.1481.  Thereafter, Plaintiff filed a

Complaint in this jurisdiction, and the case was reversed and remanded to the

Commissioner for further administrative proceedings.  AR at 707-25.

On remand, the ALJ conducted three additional hearings.  AR at 624-54, 1118-31.

The first hearing, held on April 22, 2022, was postponed by the ALJ so that Plaintiff

could participate in a psychiatric consultative exam.  *Id*. at 1129-30.  At the second

hearing, held on January 19, 2023, the ALJ received testimony from Plaintiff,

represented by counsel, and Julia Gutierrez, a vocational expert ("VE").  *Id*. at 634-54.

At the third hearing, held on June 7, 2023, the ALJ received testimony from Plaintiff,

represented by counsel, and Nicole King, a VE.  *Id*. at 624-33.  The ALJ issued an

unfavorable decision on June 20, 2023.  *Id*. at 597-614.

On August 22, 2023, Plaintiff filed suit in this Court, seeking review and reversal

of the ALJ's decision.  *Doc. 1*.  On February 26, 2024, Plaintiff filed the instant Motion.

*Doc. 19*.  Defendant responded on March 27, 2024.  *Doc. 20*.  Briefing on Plaintiff's

Motion was complete on April 10, 2024, *doc. 22*, with the filing of Plaintiff's reply, *doc.

21*.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation and quotation omitted). Indeed, the substantial evidence standard is met unless the evidence on which the ALJ is "overwhelmed by other evidence in the record or constitutes mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

III.    ALJ EVALUATION

A.  **Legal Standard**

For purposes of Supplemental Social Security Income benefits, an individual is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 416.920.  If the Commissioner finds an individual disabled at any step, the next step is not taken.  *Id.* § 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work."  *Id.* § 416.920(a)(4)(i–v); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence."  20 C.F.R.

4

§ 416.945(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 416.945(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On June 20, 2023, the ALJ issued his decision denying Plaintiff's application for SSI benefits. *See* AR at 597. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since September 6, 2016, the application date." *Id.* at 602. At step two, he found that Plaintiff has the following severe impairments: "degenerative spondylosis of the lumbar spine, fibromyalgia, osteoarthritis, rheumatoid arthritis, and

hearing loss." *Id*.  He also noted that Plaintiff has a variety of other medically determinable impairments, *see id*. at 602-07, but the ALJ found these impairments to be non-severe.  At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings.  *Id*. at 607.

At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 416.967(a).  AR at 607.  The ALJ also found that Plaintiff is limited to: (1) frequently climbing ramps or stairs, (2) frequently stooping, kneeling, crouching, crawling, reaching, handling, and fingering, (3) never climbing ropes, scaffolds, or ladders, (4) occasional exposure to wetness, humidity, extreme cold, extreme heat, and vibration, and (5) no more than moderate noise.  *Id*.  In making these findings, the ALJ concluded that Plaintiff has the RFC to return to her past relevant work as a copywriter (Dictionary of Occupational Titles ("DOT") Code 131.067-014) and thus is not disabled.  *Id*. at 613-14.  The ALJ did not proceed to step five.  *See id*. at 614.

### IV.   ANALYSIS

Plaintiff moves the Court to reverse or remand the ALJ's decision based on two main arguments: (1) the ALJ's residual functional capacity ("RFC") assessment is not based on substantial evidence because he failed to account for Plaintiff's subjective allegations of migraines, mental symptoms, and somatic symptom disorder, *doc. 19* at 6-21; and (2) the ALJ erred by finding that Plaintiff could return to her past work as a

copywriter, contrary to *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), *id.* at 21-25.
Defendant contests both of these arguments.  *See generally doc. 20.*  For the reasons
explained below, the Court finds reversible error due to the ALJ's failure to discuss
rejected probative evidence and to properly assess Plaintiff's past relevant work
("PRW") at phase two of Step 4.  Because the Court is remanding due to the ALJ's
aforementioned failures, it does not consider Plaintiff's challenges to the ALJ's findings
at phase one of Step 4.[1]

### A. Plaintiff's Hearing Limitations

In late 2022, Plaintiff partook in audiogram testing that resulted in a medical
diagnosis of moderate to severe hearing loss with 64% and 72% speech understanding
in a quiet environment in her left and right ear, respectively.  AR 1097-102.  The ALJ
acknowledged this medical finding in Step Two of his opinion and listed hearing loss as
one of Plaintiff's medically determinable impairments that significantly limits her
"ability to perform basic work activities as required by SSR 85-28 . . ."  *Id.* at 602, 605.
The ALJ never refuted the results of the audiogram testing or indicated that he
disagreed with the resulting medical diagnosis.  *See generally id.* at 600-14.

At the January 19, 2023, hearing, the ALJ asked VE Julia Gutierrez to describe the
noise level of a copywriter, and the VE Gutierrez concluded that the noise level of the

---

[1] On remand, however, the ALJ should ensure that the phase one assessment of Plaintiff's RFC employs the correct legal standards that all findings are supported by substantial evidence.

work environment for the job of a copywriter is moderate.  *See* AR at 648.  Following

this testimony, VE Gutierrez opined that Plaintiff could perform her PRW as a

copywriter if limited to no more than moderate noise.  *Id*. at 647-51.[2]  Then, Plaintiff's

counsel inquired with VE Gutierrez about Plaintiff's speech understanding diagnosis

and asked if the job of a copywriter would be eliminated if a hypothetical person could

only discern what another person is saying 64% of the time.  *Id*. at 651.  VE Gutierrez

responded, "[i]f it's more than 64% of the time, that would preclude past work."  *Id*. at

652.  Because this response from VE Gutierrez is rather ambiguous, the Court relies on

the testimony of VE Nicole King at the June 7, 2023, hearing in which Plaintiff's counsel

asked VE King a similar question regarding Plaintiff's speech understanding diagnosis.

*Id*. at 632.  The following is the relevant testimony by VE King at the June hearing:

> Q:     If the hypothetical person could only understand speech at 64% of what is
>        spoken, would that eliminate [the job of a copywriter]?
> A:     Yes.
> Q:     Okay.  Would that eliminate most jobs?
> A:     Yes.

*Id*.[3]

---

[2] VE Gutierrez opined that a hypothetical individual of Plaintiff's age and education who is capable of
occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing
and/or walking for about six hours in an eight-hour workday, all with normal breaks, who is further
limited to frequently climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, frequently
stooping, kneeling, crouching, crawling, reaching, handling, and fingering, and is also limited to
occasional exposure to wetness, humidity, extreme cold, extreme heat, and vibration, and no more than
moderate noise, could perform the job of a copywriter.  AR at 647-51.
[3] Although she did not specify, the Court presumes that VE King was discussing the job of a copywriter
as generally performed, which is generally performed in a moderate noise environment.  *See* AR at 648.

At both the January and June 2023 hearings, the ALJ failed to ask Plaintiff—or the VEs—any follow-up questions regarding the speech understanding demands of a copywriter generally.  In his order, the ALJ determined that Plaintiff "is able to perform [her PWR as a copywriter] as actually and generally performed in the national economy[.]"  *Id*. at 614.  The Court assumes—and Defendant admits—that the ALJ relied in-part on the VE testimony from the January 2023 hearing that Plaintiff could perform her PRW as a copywriter to deny benefits at Step 4.  *See doc. 20* at 19-20.

### B.  ALJ's Failure to Discuss Rejected Probative Evidence

The ALJ failed to explain—at the hearings or in his opinion—how he resolved the conflict between VE King's testimony and Plaintiff's speech understanding limitations to conclude that "Plaintiff is able to perform [the job of a copywriter] as actually and generally performed in the national economy[.]" AR at 614; *see Clifton*, 79 F.3d at 1009-10 ("[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").  VE King's testimony suggests that to perform the job of a copywriter generally in the national economy, a hypothetical person must be able to understand speech at more than 64% of what is spoken in a moderate noise environment.  If it is true that Plaintiff can only understand speech at 64% of what is spoken in her left ear and 72% of what is spoken in her right ear in a *quiet* noise environment, it is entirely plausible that she could understand less than 64%

of what is spoken (in either ear) in a *moderate* noise environment.  The ALJ made no

findings regarding the distinction between a quiet and moderate noise environment.

Given that the ALJ did not refute the results of Plaintiff's audiogram testing and never

discussed VE King's damaging testimony, the Court cannot determine how the ALJ

resolved the significantly probative evidence that Plaintiff's speech hearing limitations

could eliminate her ability to perform her PRW as a copywriter, or her ability to

perform "most work."  *See* AR at 632.  Therefore, the case must be remanded for the ALJ

to set out his specific findings and reasons for accepting or rejecting the evidence

presented by Plaintiff's speech understanding limitation diagnosis and VE King's

testimony regarding the same.

### C.  ALJ's Failure at Phase Two of Step 4

Additionally, the ALJ did not properly assess Plaintiff's PRW at phase two of

Step 4.  At the second phase of the Step 4 evaluation "[t]o make necessary findings, the

ALJ must obtain adequate factual information about those work demands which have a

bearing on the medically established limitations."  *Winfrey*, 92 F.3d at 1024 (internal

quotation marks omitted).  It is the Commissioner's responsibility to develop the record

as to the demands of a claimant's PRW.  *Id*.  Here, it appears that the ALJ determined

that Plaintiff was capable of hearing in a moderate noise environment and then only

asked VE Gutierrez if a hypothetical person with that limitation could perform

Plaintiff's PRW.  *See Winfrey* at 1025 ("This practice of delegating to a VE many of the

ALJ's fact finding responsibilities at step four . . . is to be discouraged.").  VE Gutierrez

testified that a hypothetical person with Plaintiff's limitations could perform her PRW

as a copywriter in a moderate noise environment, and the ALJ relied in-part on this

testimony to deny benefits at Step 4.  AR at 647-51; *see doc. 20* at 19-20.  The ALJ's

reliance on this testimony is damaging—considering his failure to account for Plaintiff's

speech understanding diagnosis—because it is plausible that he did not give VE

Gutierrez the correct limitations on which to base her findings.  Further, the ALJ made

no inquiry as to the speech understanding demands of a copywriter, which would

undoubtedly have a bearing on Plaintiff's speech understanding diagnosis given the

aforementioned testimony by VE King.  In sum, the ALJ's written opinion omits any

discussion of the physical or mental demands of a copywriter as actually or generally

performed, and the record is devoid of any inquiry into the speech understanding

demands of a copywriter.

      Having failed to complete phase two appropriately, the ALJ was unable to make

the necessary findings at phase three about Plaintiff's ability to meet the speech

understanding demands of her PRW despite her various hearing impairments.  *See*

*Kimes v. Comm'r, SSA*, 817 Fed. App'x. 654, 657-58 (10th Cir. 2020) (substantial evidence

did not support ALJ's conclusion that plaintiff could perform his PRW as a truck driver

because ALJ did not properly assess Plaintiff's PWR at phase two of Step 4; ALJ made

no inquiry as to how much sitting the job of a tractor-trailer truck driver requires, as it is

performed generally, despite Plaintiff having sitting limitations due to his severe impairment of degenerative disc disease of the lumbar spine).  Because the ALJ did not alternatively find, at Step 5, that Plaintiff can perform other jobs available in significant numbers in the national economy, the Court must remand the case to the Commissioner for proceedings consistent with this opinion.

## V.    CONCLUSION

For the foregoing reasons, the Court finds reversible error in the ALJ's decision. Therefore, the Court GRANTS Plaintiff's Motion to Reverse for a Rehearing with Supporting Memorandum (*doc. 19*) and REMANDS the case to the Commissioner for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**